**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAMANIKA DENHAM,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | Case No. EDCV 14-1400 SS<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Tamanika Denham ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income ("SSI") benefits on July 15, 2011, alleging a disability onset date of January 1, 2011. (Administrative Record ("AR") 10, 36). The application was denied initially on January 4, 2012, and on reconsideration on May 31, 2012. (AR 49, 58). On June 18, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 62). The hearing was held before ALJ Margaret Craig on February 28, 2013 (the "ALJ Hearing"). (AR 199). On March 19, 2013, the ALJ issued an unfavorable decision. (AR 7-20). On April 4, 2013, Plaintiff requested a review of the ALJ's decision (AR 6), which the Appeals Council denied on May 15, 2014. (AR 3). Plaintiff filed the instant action on July 16, 2014. (Dkt. No. 3).

## III.

### FACTUAL BACKGROUND

Plaintiff was born on April 29, 1974. (AR 21). She was thirty-six years old as of the alleged disability onset date and thirty-eight years old at the time of the ALJ Hearing. (AR 21, 201). Plaintiff has an eleventh grade education and no difficulty reading or writing. (AR 202). Plaintiff formerly worked for a year as a fast food restaurant cashier, but quit her job in 2007. (AR 203). In her SSI application, Plaintiff listed
\\

her impairments as depression and a need for reconstructive hand surgery following an injury. (AR 22-24).

### A. Medical History

Plaintiff first sought treatment for a hand injury at St. Bernardine Medical Center, in San Bernardino, California, on June 7, 2011. (AR 106-15). Plaintiff was diagnosed with extensive left wrist laceration, tendon laceration and ulnar nerve laceration. (AR 107). On June 15, 2011, Plaintiff had surgery on her left arm and hand. (AR 133). During this procedure, Dr. Wong, the surgeon, repaired Plaintiff's median nerve with nerve tube conduit and also repaired Plaintiff's flexor pollicis longus tendon, flexor digitorum sublimis muscle, and other tendons. (AR 148). On July 12, 2011, Plaintiff underwent a physical examination. (AR 118, 119). Her physician prescribed pain medications, including Vicodin, Soma and Tylenol 3. (AR 119).

Vicente R. Bernabe, D.O., conducted a consultative orthopedic examination on September 14, 2011. (AR 157). Dr. Bernabe diagnosed "claw hand deformity" in Plaintiff's left hand, noted decreased sensation to all of Plaintiff's fingertips and found that Plaintiff was unable to make a fist. (AR 159). However, he also found that Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently. (AR 160). There were no restrictions on the upper right arm. (Id.). Plaintiff had no restrictions on walking, standing, or sitting. (AR 161).
\\

On November 17, 2011, Marshall Handleman, M.D., performed a psychiatric consultative examination. (AR 164-69). Dr. Handleman noted that Plaintiff reported depression, among other symptoms. Plaintiff had never been hospitalized for psychiatric treatment. (AR 165). She reported no past drug abuse history, but also reported that she was "arrested and jailed six times" and last released in 2005. (AR 166).

Dr. Handleman opined that Plaintiff would have no limitations in performing simple and repetitive tasks and only mild limitations in performing detailed and complex tasks. (AR 168). Plaintiff would also have mild limitations in performing work activities on a consistent basis without special or additional supervision. (Id.). Finally, Dr. Handleman opined that Plaintiff's mental condition would cause her mild limitations in completing a normal work day or work week. (Id.).

**B.   Vocational Expert Testimony**

During the ALJ Hearing, Vocational Expert ("VE") Corrine Porter listened to Plaintiff's testimony regarding her limitations. The VE testified that Plaintiff had prior relevant work as a fast food worker. (AR 220). The ALJ then posed two hypotheticals. (AR 220-23). First, the ALJ described a hypothetical individual with an educational and work background similar to Plaintiff's. (AR 220). The individual could lift and carry twenty pounds occasionally and ten pounds frequently, and could either sit or stand and walk for six out of every eight

4

1    hours. (AR 221). However, the individual could not push or
2    pull, reach to the front laterally or overhead, or handle, finger
3    or feel with the left upper extremity. (Id.). The VE opined
4    that the individual could not perform Plaintiff's past work, but
5    could perform several other jobs, including working as an usher,
6    ticket taker or parking lot attendant. (AR 222). In response to
7    a second hypothetical, the VE testified that the same individual
8    could not find employment if she needed to be absent from work or
9    off task fifteen percent of the time due to pain or the side
10   effects of medications. (AR 223).

12   **C.   Plaintiff's Testimony**

14       Plaintiff testified that she last worked in 2007, as a
15   cashier for a fast food restaurant. (AR 202-03). Plaintiff also
16   testified that she had had no other employment since 1998. (AR
17   203). Plaintiff explained that the pain in her left hand and
18   side effects from her medications kept her from working. (AR
19   204-05). She rated the pain in her hand during the hearing at
20   9.5 out of 10, (AR 217), and testified that she normally had
21   difficulty concentrating on anything but her hand pain. (AR
22   208). However, when Plaintiff took her medications, the pain
23   "subside[d]." (AR 217).

25       Plaintiff liked to watch movies and television programs, but
26   drowsiness caused by her medications prevented her from watching
27   them from beginning to end. (AR 209). The same side effect
28   caused Plaintiff to take two-hour naps several times a day. (AR

5

1  218).  Plaintiff testified that she previously saw her doctor
2  about twice a week.  (AR 210).  However, at the time of the ALJ
3  Hearing, she testified that she visited the doctor's office only
4  when she needed to pick up prescriptions.  (Id.).

6      In addition to her hand pain, Plaintiff experienced back
7  pain that was controlled with medications.  (AR 212).
8  Plaintiff's doctors had recommended steroid injections for her
9  back, but Plaintiff declined them.  (AR 214).  Plaintiff also
10 declined treatment for her depression, because she did not "want
11 them to think I'm crazy."  (AR 205).  Nevertheless, Plaintiff
12 testified that she cried constantly because of her depression.
13 (AR 207).

15     During a normal day, Plaintiff stayed at home, tried to
16 watch television, read, listened to music, spoke with her
17 children and slept.  (AR 215-16).  Plaintiff lived with three of
18 her four children, who were fifteen, eighteen and nineteen years
19 old.  (AR 201).  Plaintiff's fourth child, an eleven-year-old
20 daughter, lived with Plaintiff's sister because Plaintiff was
21 unable to care for her.  (AR 206).  Plaintiff's sister visited
22 daily to help Plaintiff dress and bathe herself, and also
23 prepared the children's meals.  (AR 213).  Since leaving her job,
24 Plaintiff had been able to perform some volunteer work at her
25 younger daughter's school.  (AR 204).  Plaintiff also testified
26 that she could lift grocery bags with her right hand.  (AR 216).
27 \\
28 \\

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, "a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months." Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant "incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To determine whether a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps and their related inquiries are as follows:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

           the claimant is found disabled.  If not, proceed
           to step four.

  (4)  Is the claimant capable of performing his past
       work?  If so, the claimant is found not disabled.
       If not, proceed to step five.

  (5)  Is the claimant able to do any other work?  If
       not, the claimant is found disabled.  If so, the
       claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1099, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock

v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not under a disability within the meaning of the Social Security Act since July 15, 2011, the date of her application.  (AR 20).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since July 15, 2011.  (AR 12).  At step two, the ALJ found that Plaintiff's only severe impairment was dysfunction of the left hand.  (Id.).  However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).[1]  (AR 14).  The ALJ noted that "no treating or examining physician recorded objective clinical or diagnostic findings equivalent in severity to the

\\

---

[1] A physical or mental impairment is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520.

9

criteria of any listed impairment." (Id.). The ALJ then found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) and [Social Security Ruling ("SSR")] 83-10, specifically as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she cannot push and/or pull with the left upper extremity; she can frequently climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she cannot reach to the front, laterally, or overhead with the left upper extremity; she cannot perform handling, fingering, or feeling with the left upper extremity; and she must avoid even moderate exposure to hazards, such as heights or dangerous moving machinery.

(AR 14-15). In reaching this finding, the ALJ stated that she had considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p. (Id.). The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (Id.).

The ALJ found that the claimant's subjective allegations were "not fully credible." (AR 15). The ALJ based her conclusions in part on "conflicting information" provided by Plaintiff. (AR 16). For example, the ALJ noted that Plaintiff testified that she injured her hand in 2009 and in a disability report claimed that her condition became severe in January 2011. (Id.). However, Plaintiff's medical records showed that she injured herself on June 7, 2011, when her hand and forearm went through a glass window. (Id.). The ALJ also questioned whether Plaintiff was unemployed due to her medical problems, because Plaintiff had only a limited work history over the previous fifteen years and admitted that she quit her job even before she injured her hand. (Id.). Finally, the ALJ noted that Plaintiff did not report the alleged side effects from her medications to any treating physician, calling their severity into question. (Id.).

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as defined by 20 C.F.R. § 416.965. (AR 18). However, based on the vocational expert's testimony and considering Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (AR 18). These included working as an usher, ticket taker or parking lot attendant. (AR 19). Therefore, the ALJ found that Plaintiff was not disabled within the meaning of 20 C.F.R. § 416.920(g). (AR 20).

\\

## VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\
\\

**VII.**

**DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff contends that there is a conflict between the Plaintiff's RFC and the employment opportunities identified by the VE, which the ALJ failed to address. (Memorandum in Support of Plaintiff's Complaint (the "MSPC") at 2). Second, Plaintiff asserts that the ALJ improperly rejected Plaintiff's statements regarding her subjective symptoms. (MSPC at 7). The Court disagrees with both contentions.

**A.  To The Extent That Plaintiff's Residual Functional Capacity Conflicts With The Vocational Expert's Findings, The ALJ Properly Resolved the Conflict**

In order to rely on vocational expert testimony regarding the requirements of a particular job, an ALJ must inquire whether the VE's testimony conflicts with the Dictionary of Occupational Titles (the "DOT"). Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, if the ALJ ultimately relies on a job description that conflicts with a claimant's functional limitation, she must explain the deviation. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001). Where the record contains persuasive evidence to support the deviation, however, the ALJ may rely on expert testimony -- including that of a vocational expert -- that contradicts the DOT. Light v. Social Security Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citing Johnson v.

13

Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality or inferences drawn from the context of the expert's testimony." Id. (citations omitted).

Here, the ALJ specifically inquired whether the vocational expert's testimony was consistent with the DOT listings.  (AR 223).  The VE responded that her testimony was consistent. (Id.).  The ALJ then asked Plaintiff's counsel if she wished to add anything before the hearing closed.  (Id.).  Counsel for Plaintiff declined.

The DOT listings do not expressly state whether the three jobs identified by the vocational expert require bilateral hand and arm dexterity.  See Dictionary of Occupational Titles ("DOT") 344.677-014, 1991 WL 672865 (usher); DOT 344.677-010, 1991 WL 672864 (ticket taker); DOT 915.473-010, 1991 WL 687865 (parking lot attendant).  Plaintiff contends that the DOT listings are not merely ambiguous but directly contradict the residual functional capacity adopted by the ALJ.  (MSPC at 5).  Therefore, Plaintiff contends, the ALJ adopted the vocational expert's testimony in error, and compounded the error by failing to "articulate reasons for deviating from the DOT."  (MSPC at 9).  The Court disagrees.

First, substantial evidence in the record as a whole supports the residual functional capacity adopted by the ALJ and the vocational expert's conclusion that Plaintiff could perform

14

the three identified jobs. Plaintiff's medical treatment records consistently support the ALJ's finding that only Plaintiff's left arm and hand were impaired. (See, e.g., AR 107 (hospital record of initial hand injury), 133 (left hand surgical record), 160-61 (consulting orthopedist's examination record)). The ALJ noted that no significant medical findings in the record conflict with the adopted RFC. (AR 18). Moreover, Plaintiff testified at length as to symptoms and treatment involving only her left hand. (AR 210-12). Plaintiff also testified that she was capable of lifting grocery bags with her right hand. (AR 216). Plaintiff's RFC reflected all of her physical limitations.

Moreover, the vocational expert was aware of these limitations. The VE listened to Plaintiff's testimony about her left hand. The ALJ then posed hypotheticals that recognized Plaintiff was limited to the use of her right upper extremities. (AR 221-23). The ALJ asked Plaintiff to identify her dominant hand. Plaintiff stated that she was "right-handed" and that Plaintiff's limitations affected only her non-dominant hand. (AR 221). Responding directly to this information, the VE opined that Plaintiff could not perform her past job as a fast food worker with only one hand, but could perform the three alternative jobs. (AR 221-22). The VE also differentiated parking attendant jobs that require driving from those that do not, further evidence that she considered Plaintiff's particular physical limitations when she identified available jobs. (AR 222). Thus, to the extent that there was any inconsistency between the DOT listings for the three jobs and the residual

functional capacity adopted by the ALJ, the deviation was explained both by substantial evidence in the record and the context in which the VE testified. The Court notes that the DOT does <u>not</u> state that these positions require use of both hands.

Finally, although the DOT listings for the three identified jobs do not specify whether the worker must be able to use both arms and hands, each description includes examples of tasks that may be performed with only one hand. These include "[a]ssist[ing] patrons at entertainment events to find seats" (DOT 344.677-014, 1991 WL 672865 (usher)); "[v]erif[ying] credentials of patrons desiring entrance into press-box" (DOT 344.677-010, 1991 WL 672864 (ticket taker)); and "plac[ing] numbered tag[s] on windshield of automobile to be parked." (DOT 915.473-010, 1991 WL 687865 (parking lot attendant)). DOT descriptions represent the maximum requirements for each job, not the minimum. <u>See</u> SSR 00-4p, 2000 WL 1898704, at *3. To the extent that a DOT listing conflicts with vocational expert testimony, it is the ALJ's responsibility to determine whether the VE testimony "is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." <u>Id.</u> at *2. Here, the ALJ specifically addressed the vocational expert's testimony and found it consistent with the DOT listings. (AR 19). The ALJ noted that she took SSR 00-4p into account in determining that the vocational expert's testimony was consistent with Plaintiff's residual functional capacity. (<u>Id.</u>).

The court may overturn the ALJ's decision only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the court may not reverse the ALJ's decision "on account of an error that is harmless." Id. As a general rule, an ALJ's error is harmless if "it is inconsequential to the ultimate nondisability determination." Id. at 1115 (citations and internal quotation marks omitted).

Here, based on the evidence of record, the context of the vocational expert's testimony, and the DOT listings at issue, the ALJ had ample reason to conclude that Plaintiff retained a residual functional capacity to perform any of the identified jobs. Moreover, to the extent that the ALJ did not articulate "reasons for deviating from the DOT," as Plaintiff alleges, any error was inconsequential to the outcome and, therefore, harmless.

**B.   The ALJ Offered Clear And Convincing Reasons Supported By Substantial Evidence For Finding Plaintiff's Subjective Testimony Less Than Fully Credible**

When assessing a claimant's credibility, the ALJ must engage in a two-step analysis. Molina 674 F.3d at 1112. First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. (Id.). If such evidence exists, the ALJ must make specific credibility findings

in order to reject the claimant's testimony. (Id.). The ALJ may use "ordinary techniques of credibility evaluation" during this inquiry. Smolen, 80 F.3d at 1284. The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

Here, the ALJ determined that the medical record contained evidence of a severe physical impairment to Plaintiff's hand as well as objective evidence of treatment for back pain. (AR 12). However, the ALJ also articulated specific, clear and convincing reasons for discounting Plaintiff's testimony about the severity of her physical symptoms. First, the ALJ cited Plaintiff's testimony that she left work to care for her children as an indication that Plaintiff did not stop working due to her physical condition. (Id.). Plaintiff also provided two different dates, more than a year apart, for her hand injury, calling her credibility into question. (Id.). Moreover, the ALJ noted that Plaintiff had only a limited work history prior to her alleged disability onset date, "rais[ing] questions" about whether Plaintiff left work due to her medical condition. (Id.). The ALJ observed that at three occupational therapy sessions in the month following her hand surgery, Plaintiff reported experiencing little or no hand pain. (AR 17). Finally, although Plaintiff complained of drowsiness caused by her pain medications, the ALJ noted that none of her physicians recorded such complaints during Plaintiff's treatment. (AR 16).

1    Plaintiff's daily activities and conservative treatment also
2 call her allegations of disabling pain and fatigue into question.
3 Plaintiff described volunteering at her children's school, where
4 she did some paperwork. (AR 204). Plaintiff also described
5 being able to lift grocery bags with her right arm. (AR 216).
6 Plaintiff reported that her doctors recommended steroid
7 injections for her back pain, but she declined these treatments.
8 (AR 214). Plaintiff also testified that she had not consulted a
9 psychiatrist or psychologist for her depression, and was not
10 taking any anti-depressants. (AR 205).

12    It was proper for the ALJ to rely on and cite evidence of
13 Plaintiff's daily activities in evaluating whether her subjective
14 testimony was credible. See, e.g., Smolen, 80 F.3d at 1284 (ALJ
15 may consider claimant's daily activities in evaluating testimony
16 as to severity of symptoms); Fair, 885 F.2d at 603 (daily
17 activities may be reason to discredit excess pain allegation
18 where claimant spends substantial part of the day performing
19 activities that may transfer to a work setting). Similarly, the
20 ALJ properly considered Plaintiff's conservative treatment as
21 evidence that her symptoms were not as severe as she alleged.
22 See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)
23 (evidence of "conservative treatment" is sufficient to discount
24 claimant's testimony regarding severity of an impairment);
25 Tommasetti, 533 F.3d at 1039 (failure to seek aggressive,
26 alternative or "more-tailored" treatment after discontinuing
27 medication due to side effects supports adverse credibility
28 finding). Accordingly, the ALJ provided clear and convincing

reasons, supported by substantial evidence, for discounting Plaintiff's subjective statements.

## VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 27, 2015

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**